FILED

MAR 27 2006

T.S. McGREGOR, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In Re: | ) | No. 04-08481-JAR11 |
| GARLIZ INVESTMENTS, LLC, | ) | |
| | ) | Adv. No. 05-80054-JAR |
| Debtor(s). | ) | |
| _____ | ) | |
| | ) | |
| GARLIZ INVESTMENTS, LLC; MANUEL | ) | |
| GARCIA and ESTER GARCIA, | ) | |
| | ) | |
| Plaintiff(s), | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BURGER KING CORPORATION, | ) | |
| | ) | |
| Defendant(s). | ) | |
| _____ | ) | |

This matter came on for hearing on the 27th of June 2005 on the defendant's Motion to Dismiss Adversary Complaint or Alternatively, Motion to Transfer, filed on May 2, 2005. On June 22, 2005, the Court held a status conference and limited the scope of the June 27th hearing to the forum selection, jurisdiction and transfer issues. The Court has jurisdiction to hear this motion under 28 U.S.C. §157, 28 U.S.C. §1334 and its duty to determine its own subject matter jurisdiction. See e.g. In re Birting Fisheries, Inc. 300 B.R. 489 (9th Cir. BAP 2003).

**MEMORANDUM OPINION - 1**
MARCH 27, 2006

entered: 3/28/06

## IDENTITY AND RELATIONSHIP OF THE PARTIES

The instant complaint was filed by Garliz Investments, LLC, (Garliz) the debtor in the main case, and its principals and guarantors Manuel and Esther Garcia (Garcias) against Burger King Corporation. Pre-petition the Garcias formed the debtor Garliz Investments, LLC for the purpose of entering into franchise agreements with Burger King. Garliz Investments, LLC had entered into franchise agreements with Burger King, covering 27 Burger King restaurants in Washington, Idaho and Oregon. The actions which give rise to this complaint occurred pre petition.

## PROCEDURAL HISTORY

On November 3, 2004 Burger King commenced an action against Garliz and the Garcias (as guarantors) in the U.S. District Court for the Southern District of Florida, seeking damages in the approximate amount of $2.1 Million for unpaid amounts due under the franchise agreements. Garliz filed the instant bankruptcy petition on November 18, 2004, before an answer was due to the Florida complaint. The Garcias filed an answer and counterclaim including a jury demand on January 7, 2005. The same day they filed a notice of removal as to the Florida proceeding. That removal was abandoned on February 25, 2005 and the proceeding was returned to the Florida court. The Florida court reopened its case as to the Garcias only, the automatic stay remaining in effect as to the debtor. On February 8, 2005 Burger King filed a motion for relief from stay (Doc #134) seeking among other things to "exercise its rights with respect to franchise agreements... ." At the February

**MEMORANDUM OPINION - 2**
MARCH 27, 2006

25, 2005 hearing, the court denied the motion without prejudice, conditioned upon continuing adequate protection payments being made by Garliz. An order to this effect was entered on March 8, 2005. That same day Burger King filed its proof of claim in the underlying bankruptcy seeking the unpaid royalties sought in the Florida action. This was nine days before the deadline to file a proof of claim. Four days after that, on March 22, 2005 the debtors filed the instant complaint objecting to the proof of claim and seeking relief essentially identical to that sought by the Garcias in their Florida counterclaim. The defendant Burger King filed a motion to dismiss or transfer this adversary. The Court has limited the scope of this Decision to the issue of transfer. On August 19, 2005, subsequent to the hearing on this matter, in open court this matter was converted from a case under Chapter 11 to one under Chapter 7 upon Garliz's motion. Anthony Grabicki was appointed the Chapter 7 trustee.

## LEGAL ISSUES

This adversary proceeding was brought by the Debtor Garliz Investments, LLC, and its principals Manuel and Esther Garcia. Its first count seeks "complete setoff" against the claim filed by Burger King based upon the damages resulting from the remaining eight counts of the complaint: breach of the franchise agreements, tortious interference with business relationship and expectancy, breach of implied covenant of good faith and fair dealing, intentional misrepresentation/fraud/deceit, negligent misrepresentation, Franchise Investment Protection Act violation,

**MEMORANDUM OPINION - 3**
MARCH 27, 2006

Consumer Protection Act violation, and promissory estoppel. Among other relief sought Burger King seeks to have this adversary proceeding transferred to the Southern District of Florida.

### CORE OR NON-CORE?

Bankruptcy Courts are courts of limited jurisdiction. They exercise such jurisdiction as is granted to them by Congress, but within the constraints provided in the United States Constitution.

Congress has provided that the district courts have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). The district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b).

Congress has given the district court the authority to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges. 28 U.S.C. §157(a). The District Court for the Eastern District of Washington has made such a reference in its Local Rule 83.5.

The bankruptcy judges may hear and decide by final order or judgment "all cases under title 11 and all core proceedings" "arising under" or "arising in" a case under title 11. 28 U.S.C. §157(b)(1). These final orders or judgments are subject to appeal to the district court or to the bankruptcy appellate panel established by the circuit. 28 U.S.C. §158.

Although a bankruptcy judge "may hear a proceeding that is not

**MEMORANDUM OPINION - 4**
MARCH 27, 2006

a "core" proceeding but that is otherwise "related to" a case under title 11," it may not make a final order or judgment unless all parties consent.   28 U.S.C. §157(c).   Absent such unanimous consent, the bankruptcy judges must make proposed findings of fact and conclusions of law to be reviewed de novo by the district judge upon timely objection.   28 U.S.C. §157 (c)(1).

This complicated jurisdictional grant was enacted to deal with the problems created when the United States Supreme Court invalidated the much broader jurisdictional grant enacted in the Bankruptcy Code of 1978.   Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed 2d 598 (1982).

In the Marathon case, a Chapter 11 debtor had sued Marathon in bankruptcy court for breaches of contract and warranty, misrepresentation, coercion and duress.   Marathon sought dismissal of the adversary proceedings on the grounds that the Bankruptcy Code of 1978 unconstitutionally conferred Article III judicial power upon bankruptcy judges who lacked life tenure and protection against salary diminution.   The Supreme Court sustained Marathon's objection to the constitutionality of the broad jurisdictional grant of the 1978 Code.   The Court found the causes of action in Northern Pipeline's adversary proceeding involved rights created by state law, independent and antecedent to the bankruptcy case. Those rights could not be finally adjudicated by judges not cloaked in the full protections provided for judges in Article III of the United States Constitution.   Thus adversary proceedings that were

**MEMORANDUM OPINION - 5**
MARCH 27, 2006

merely "related to" a bankruptcy case could not be finally adjudicated by non-Article III bankruptcy judges.

Congress responded to this problem in 1984 by adopting the current jurisdictional scheme contained in 28 U.S.C. §1334, 28 U.S.C. §157 and 28 U.S.C. §158 discussed above. It divides the universe of bankruptcy court jurisdiction into two categories "core" matters and "non-core" or "related to" matters.

Congress achieved this division by listing fifteen non-exclusive examples of what it considered "core proceedings." 28 U.S.C.§157(b)(2)(A) through (O). Of these examples, four are arguably applicable to the case before us:

> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate
> . . .,
>
> . . .
>
> (C) counterclaims by the estate against person filing claims against the estate;
>
> . . .
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, . . .

(A) and (O) are quite general in their scope while (B) and (C) are specific. Courts have been reluctant to simply apply these provisions broadly or literally because of the constitutional questions posed by such approach.

The Ninth Circuit grappled with these issues in the case of

**MEMORANDUM OPINION - 6**
MARCH 27, 2006

1 Piombo Corp. v. Castlerock Properties, (In re Castlerock

2 Properties) 781 F.2d 159 (9th Cir. 1986). Piombo was suing

3 Castlerock in state court. Castlerock filed bankruptcy. Piombo

4 sought stay relief. Castlerock answered the stay relief request

5 incorporating state law counterclaims against Piombo. Piombo

6 objected to trial of the counterclaims against it in the stay

7 relief proceeding. The bankruptcy court denied Piombo's

8 objection. Piombo then answered the counterclaim and filed a Proof

9 of Claim. At the pretrial conference, Piombo objected to the

10 bankruptcy court's jurisdiction citing Marathon. This objection

11 was denied and the bankruptcy judge tried the case and entered

12 judgment against Piombo on the counterclaims. Piombo appealed and

13 the district court ruled that the bankruptcy court lacked

14 jurisdiction to decide the state law counterclaim issues. The

15 issue before the Ninth Circuit was . . . "[W]hether, under the 1984

16 Act, the bankruptcy court had jurisdiction to enter final judgment

17 on Castlerock's state law counterclaims." 781 F.2d 159, 161.

18     The Circuit court analyzed the issues as follows:

19     28 U S C § 157(b)(2), which enumerates the proceedings
        designated as "core" consists of two "catch-all
20      provisions, §157(b)(2)(A) and (O)and a list of more
        specific provisions. §157(b)(2)(B)-(N). The only one of
21      the specific provisions which might apply to Castlerock's
        counterclaims is section 157(b)(2)(C), "counterclaims by
22      the estate against persons filing claims against the
        estate." However, it seems unfair under the facts of
23      this case to categorize the counterclaims as falling
        within this provision. The counterclaims were asserted
24      before the Proof of Claim was filed. Piombo would not
        have filed the Proof of Claim if the bankruptcy court had
25      declined jurisdiction over the counterclaims. Nor are we
        persuaded that they fall within either of the catch-all
26      provisions, "matters concerning the administration of the
        estate," § 157(b)(2)(A) or "other proceedings affecting

27

**MEMORANDUM OPINION - 7**
28 MARCH 27, 2006

the liquidation of the assets of the estate." §
157(b)(2)(O). State law contract claims that arguably
fall within these catch-all provisions have been held to
be "noncore" "related proceedings" under §157(c).

. . . (citations omitted)

Accordingly, we hold that state law contract claims that
do not specifically fall within the categories of core
proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N)are
related proceedings under § 157(c) even if they arguably
fit within the literal wording of the two catch-all
provisions, sections § 157(b)(2)(A)and (O). To hold
otherwise would allow the bankruptcy court to enter final
judgments that this court has held unconstitutional.
Since we find the case before us a "related proceeding"
the district court was correct in ruling that the
bankruptcy court had no jurisdiction to enter judgment.
28 U.S.C. § 157(c)(1).

781 F.2d 159, 161-162.

Castlerock then argued that even if the counterclaims were

"related to" matters Piombo had consented to bankruptcy

jurisdiction when it filed its counterclaim relying on 28 U.S.C. §

157(c)(2). The court rejected this argument saying:

Castlerock relies on well-settled law that a creditor
consents to jurisdiction over related counterclaims by
filing a proof of claim. However, Castlerock cites no
case in which the filing of the proof of claim followed
the bankruptcy court's assertion of jurisdiction over the
counterclaims despite objections from the creditor. The
purpose of the rule, to prevent a bankruptcy trustee from
having "to split a cause of action by defending against
the claim in the summary proceedings and then seeking
affirmative relief in a plenary suit," is not served by
forcing the creditor to file a proof of claim as a
defensive maneuver, thereby conferring jurisdiction on
the bankruptcy court. Asserting an affirmative defense
does not constitute consent. By analogy, Piombo/s filing
the proof of claim should not be deemed consent.

781 F.2d 159, 162-163.

In dealing with these issues the Ninth Circuit observes, "[W]e

are persuaded that a court should avoid characterizing a proceeding

as 'core' if to do so would raise constitutional problems." 781

MEMORANDUM OPINION - 8
MARCH 27, 2006

F.2d 159, 162.

The Ninth Circuit appeared to have dramatically limited the scope of its ruling in Castlerock when it decided Benedor Co. V. Conejo Enterprises Inc., 71 F. 3d 1460 (9th Cir. 1996). (Herein after referred to as Conejo I.) Benedor and Conejo allegedly entered into a contract wherein Conejo was obligated to deliver its "green waste" to Benedor and pay Benedor for disposal. Conejo refused to deliver pursuant to this contract, and Benedor sued in state court. Conejo filed for Chapter 11 relief and removed the state court action to bankruptcy court. Benedor requested that the bankruptcy abstain from hearing the state court action and grant relief from stay so that action could proceed in state court. The bankruptcy judge denied both of Benedor's motions, reasoning if Benedor filed a proof of claim the state action would be a core proceeding and therefore not subject to mandatory abstention and conversely, if Benedor didn't file a proof of claim the claim would be discharged and there would be no need for a state court trial. Benedor appealed to the district court and on the day of hearing that appeal filed its proof of claim (the last day for filing one.) The district court ruled that the state action was non-core and therefore subject to mandatory abstention, thus the stay should be lifted. Conejo appealed.

The majority of the Circuit's panel found that "[I]n cases in which a creditor files a proof of claim seeking allowance of that claim, core jurisdiction arises." 71 F.3d at 1466. The majority limited Castlerock to its "unique facts" over the dissent of Judge

MEMORANDUM OPINION - 9
MARCH 27, 2006

Fletcher, the author of Castlerock, who observed that the decision unnecessarily put Benedor in a "Kafkaesque position". 71 F.3d at 1468.

This ruling was not the end of those issues in this case. Less than nine months later, the panel revisited the case and withdrew its previously published opinion (Conejo I) in Benedor Corp v. Conejo Enterprises, Inc. 96 F. 3rd 346 (9th Cir. 1995) (hereinafter referred to as Conejo II.) This withdrawal of the published opinion was triggered by the Supreme Court's opinion in Things Remembered, Inc. v. Petrorca, 516 U. S. 124, 116 S.Ct. 494, 133 L.Ed 2d 461 (1995) which held that under the relevant statute "an appellate court does not have jurisdiction to review a district court's order remanding a case to state court." 96 F.3d at 350. In the course of vacating its opinion it discussed its previous ruling on whether filing of a claim converted a state claim into a core matter:

> In our published opinion, we held that Benedor's filing of the claim in bankruptcy rendered the state law action a core proceeding. In doing so, we were in error.
>
> While there can be no serious dispute that claims filed in bankruptcy are within the bankruptcy court's core jurisdiction, the filing of a claim does not consolidate it with the pending state law case (into the claim) even though they are based on the same transaction. Both continue to exist, and must be considered, separately.

96 F.3d at 349.

Despite ruling that the district court's ruling that the bankruptcy court should have abstained was not appealable, the court felt the issue as to whether the stay should be lifted should be remanded to the bankruptcy court in light of the fact that a claim had now been

**MEMORANDUM OPINION - 10**
MARCH 27, 2006

filed. The majority opinion suggests the bankruptcy court was within its discretion when it refused to lift the stay citing a desire to keep the "playing field level" in the negotiation process. 96 F.3d at 353. Judge Fletcher dissented in part questioning whether the creditor should be held hostage for the common good and citing Marathon concerns. 96 F.3d 355.

The Ninth Circuit revisited the issue again in Conejo III. In re G.I. Industries, Inc., 204 F.3rd 1276 (9th Cir. 2000). In this case Conejo's trustee rejected Conejo's executory contract with Benedor. Benedor then filed a proof of claim for damages arising from the rejection of the contract. The trustee objected to the proof of claim arguing that the contract was unenforceable under state law. After a trial the bankruptcy court found the contract unenforceable and denied the claim. Benedor appealed arguing the bankruptcy court lacked jurisdiction to consider the validity of the contract. The Court of Appeals ruled that the non-core state breach of contract issue was subsumed in the claims allowance process and thus was within the bankruptcy court's jurisdiction.

What rules are to be drawn from this intricate judicial tapestry? A court should avoid characterizing a proceeding as "core" if it would raise Marathon issues. Castlerock. The filing of a proof of claim does not necessarily convert the underlying state law dispute into a "core" proceeding. Conejo II. The bankruptcy court may decide state law issues in the claims allowance process. Conejo III.

**MEMORANDUM OPINION - 11**
MARCH 27, 2006

1    These issues were confronted again in the case of In re

2    Marshall, 264 B.R. 609 (C.D. Cal. 2001). This was an appeal to the

3    district court from a decision of the bankruptcy court. In re

4    Marshall, 257 B.R. 35 (Bkrcy C.D. Cal. 2000). A creditor had filed

5    an adversary proceeding objecting to the discharge of the creditors

6    defamation claim against the Debtor. The creditor subsequently

7    filed a proof of claim in the Debtor's bankruptcy case. The

8    Debtor counterclaimed against the creditor for tortious

9    interference with an expectation of inheritance. A trial was held

10   before the bankruptcy court at which the Debtor prevailed both on

11   the defamation and the tortious interference claims. The creditor

12   objected that the probate exemption barred jurisdiction over the

13   interference with expected inheritance counterclaim. The

14   bankruptcy court rejected the creditors arguments. It held that

15   the creditor had consented to bankruptcy court jurisdiction when he

16   filed his proof of claim, that the issues before the court were

17   "core" matters, and it issued a final judgment in favor of the

18   Debtor. The Creditor appealed to the district court.

19   The district court found that the probate exemption to

20   bankruptcy jurisdiction did not apply. It then examined the core

21   versus non-core distinction. 264 B.R. 625-632. Although the

22   counterclaim before the court fell within the literal wording of

23   28 U.S.C. §157(b)(2)(c),considering the Marathon/Castlerock

24   implications, the court concluded it was a non-core "related to"

25   proceeding saying in part:

26       When a counterclaim is only somewhat related to the claim
         against which it is asserted, and when the unique
27

**MEMORANDUM OPINION - 12**

28   MARCH 27, 2006

characteristics and context of the counterclaim place it outside of the normal type of set-off or other counterclaims that customarily arise, thus rendering the efficiency concerns not at issue, the counterclaim should not be characterized as core.

264 B.R. at 632.

Pursuant to this ruling the district court vacated the bankruptcy court's judgment on the counterclaim and conducted its own de novo review. [1]

As the court in In re Marshall recognized, the issues presented in our case are close issues over which reasonable minds could differ. The complaint asserts nine causes of action, only one of which arises under Title 11 and that is the debtor's objection to Burger King's proof of claim. The remaining eight causes of action do not arise under or in Title 11 but are causes of action based in state law that exist independently of Title 11: breach of contract, tortious interference with a business relationship, breach of implied covenant of good faith and fair dealing, intentional misrepresentation or fraud, negligent

---

[1]

After conducting its de novo review, the district court ruled in favor of the debtor and against the creditor on the interference with an expectancy of inheritance counterclaim and adopted the bankruptcy court's proposed findings and conclusions as modified, and entered judgment against the creditor on the counterclaim. Both parties appealed and the Ninth Circuit reversed on the ground that the probate exclusion to federal jurisdiction applied in this bankruptcy matter. In re Marshall, 392 F.3d 1118 9th Cir. (2004). The court did not reverse the district court decision that the matter was a "non-core" "related to" issue. The Ninth Circuit decision has been appealed to the United States Supreme Court and that court granted certiorari. Marshall v. Marshall, ___ U.S. ___ _____, 126 S.Ct. 35, 162 L.Ed 2d 933 (9/27/05). The case has been argued and is awaiting decision.

MEMORANDUM OPINION - 13
MARCH 27, 2006

misrepresentation, violation of the Franchise Investment Protection Act, violation of the Consumer Protection Act and promissory estoppel. These causes of action fall within the literal language of 28 U.S.C.§ 157 (b)(2)(C) which provides that 'counterclaims by the estate against persons filing claims against the estate,' are included in core proceedings. As we have seen, a number of cases have concluded that even if certain causes of action are counterclaims within the language of 28 U.S.C. § 157(b)(2)(C), they are nevertheless non-core. Here, the proof of claim appears to have been filed defensively, as the original claim for these amounts due was made pre-petition in the Florida action. The creditor did seek relief from stay in one form or another prior to filing its proof of claim and is now seeking to have its rights determined in the original forum it brought suit. The debtor's counterclaims are unarguably compulsory as they arise out of the same transactions as the debtor's claims for money, the franchise agreements and resulting relationship. Considering all of these facts, it is this court's ruling that the debtor's objection to the proof of claim is "core" and the remaining causes of action contained within the complaint are non-core "related to" matters.

The court having concluded that the complaint and answer herein contain almost exclusively non-core related to causes, must decide now which court is the more appropriate forum to hear and enter judgment on those claims. This court does not possess exclusive jurisdiction over these claims as indicated in 28 U.S.C. §1334. In fact a federal district court enjoys the same power over

**MEMORANDUM OPINION - 14**
MARCH 27, 2006

everything up to and included 'cases under title 11.' 28 U.S.C. §1334(a). The court also notes that although the non-core determination is vital to any discussion of bankruptcy court jurisdiction, it is not outcome determinative as to which particular forum is the most appropriate. Burger King has argued a number of basis to transfer this proceeding to the Florida district court.

## FORUM SELECTION CLAUSE

Each of the franchise agreements entered into contained a similar forum selection clause designating one of two courts in Florida as the appropriate place to bring claims arising out of the contract. Burger King seeks enforcement of that provision.

The law on forum selection clauses necessarily begins with the U.S. Supreme Court's ruling in Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972.) The Supreme Court in Bremen indicated a strong federal endorsement of forum selection clauses, ruling that freely negotiated forum selection clauses are prima facie valid and are to be honored absent proof on the part of the party seeking its non-enforcement of some countervailing reason for non-enforcement such as: 1) fraud or overreaching, 2) strong public policy in favor of another forum or 3) enforcement would be so seriously inconvenient as to be unreasonable. The 9th Circuit in Manetti-Farrow v. Gucci, 858 F.2d 509 (9th Cir. 1988) applied the Bremen test and concluded that forum selection clauses would extend even to tort causes of action if such tort analysis would involve terms of the contract. The Supreme Court later in Carnival Cruise

MEMORANDUM OPINION - 15
MARCH 27, 2006

Lines v. Shute, 499 U.S. 585 (1991) extended the Bremen reasoning to form contracts, for which the forum selection clause was not freely negotiated, recognizing the necessity for such to multi-arena entities. Does any countervailing reason against enforcement of the forum selection clauses exist in this case?.

**Fraud or Overreaching**: The debtor argues in its objection that the fraud alleged in the complaint is a basis to invalidate the forum selection clause, however fraud in the inducement or as to other clauses is not sufficient to overcome a forum selection clause and the debtor has not argued or pled that there was fraud as to the inclusion of the forum selection clause itself. Stamm v. Barclays Bank of New York, 960 F.Supp 724 (SDNY 1997); Argueta v. Banco Mexicano, 87 F.3d 320 (9th Cir. 1996) at 325. The debtors argument on this basis fails.

**Public Policy**: The debtor argues that the strong public policy in favor of bankruptcy courts resolving claims against bankrupt debtors overrides the forum selection clause in favor of this court.

There are a number of bankruptcy court cases in which courts have enforced forum selection clauses holding that the filing of a bankruptcy petition should not over come Bremen's strong policy in favor of forum selection clauses. Howard Steinberg 1 Bankruptcy Litigation Sec 2:9. Most courts agree that if a matter is "related to" a bankruptcy case and does not present any core issues, that the forum selection clause should be enforced. This rationale has also held true in arbitration clause cases even if

MEMORANDUM OPINION - 16
MARCH 27, 2006

one portion of the proceeding was core. MCI v. Gurga (In re Gurga) 176 B.R. 196 (9th Cir. BAP 1994). However, there is authority in favor of retaining all core matters with the bankruptcy court, without regard to forum selection clauses. There are also courts which have fashioned remedies so as to retain the core causes of action and allow the forum selection clause to be enforced as to the non-core matters. In re Kamine/Besicorp Allegany,L.P., 214 B.R. 953 (Bkrtcy NJ 1997). The causes of action presented here arise out of state law, were in fact asserted pre-petition, the creditor has attempted to have them resolved in the Florida forum and is seeking to return to that forum. The debtor's objection to the creditor's claim is what ties the litigation to the bankruptcy forum.

Admittedly there is a policy in favor of the bankruptcy court hearing all matters relating to the bankruptcy case. In re Parent Inc., 221 B.R. 609, 620 (Bkrtcy Mass.1998). However here the original Chapter 11 reorganization case has been converted to a chapter 7 case. The Chapter 7 trustee, Mr. Grabicki, has advised in open court, that he has no objection to this adversary proceeding being heard in the District Court in Florida. Given that position, the argument based on favoring the single bankruptcy fails in contest with the strong policy in favor of enforcement of forum selection clause.

**Unreasonably inconvenient**: The third Bremen question is whether requiring the parties to litigate in Florida is so seriously inconvenient as to be unreasonable and deprive the party

MEMORANDUM OPINION - 17
MARCH 27, 2006

of its day in court. There are essentially three parties to this proceeding: the debtor (a Washington corporation), Burger King (a Florida corporation) and the Garcias (residents of Idaho). Two of these parties are already involved in litigation in Florida, Burger King and the Garcias, necessitating travel to Florida. The debtor was involved in that litigation until the bankruptcy was filed. Each of these litigants were parties to the contract containing the forum selection clause, so their convenience is of less relevance in contrast to other factors to be weighed. Manetti-Farrow, 858 F.2d 509 (9th Cir. 1988). The 11th Circuit has held that merely the fact of greater expense to one party over the other does not meet the grave inconvenience required by Bremen's unreasonableness standard. Steward v. Ricoh, 810 F. 2d 1066 (11th Cir. 1987). The issues presented here are virtually identical to what is in the Garcias' counterclaim against Burger King in Florida. Burger King lists fourteen witnesses in Florida, the debtor has not indicated as many are in Washington. Debtor's trial counsel is also located in Florida. The debtor argues that it will be inconvenient for its witnesses and principals to travel to Florida for the litigation, however the Garcias (presumably the persons with the most relevant information) will already be traveling from Idaho to Florida because of the litigation proceeding there. Further factors of judicial economy weigh in favor of allowing the proceeding to be litigated in Florida. The United States District Court in Florida can enter a final judgment on the non-core issues. An appeal from that decision would go to the Court of Appeals, eliminating one

**MEMORANDUM OPINION - 18**
MARCH 27, 2006

court in the appeal process. Litigating these causes of action in

Florida is not so seriously inconvenient as to be unreasonable.

**CONCLUSION**

The court finds that the complaint contains one core cause of

action and the remaining causes of action are non-core "related to"

proceedings. The debtor has not overcome the strong presumption in

favor of enforcing the forum selection clause as to the non-core

matters. The court further concludes that it is most efficient to

lift the automatic stay to allow all the parties to proceed with

litigation of the "related to" causes of action in the United

States District Court in Florida. This adversary proceeding will

be stayed pending the completion of that litigation. At that time

the parties will return to this court for resolution of any pending

claim objection dispute.

DONE THIS ___27___ day of March, 2006.

_____
BANKRUPTCY JUDGE

**MEMORANDUM OPINION - 19**
MARCH 27, 2006